WILLIAM J. SHAW, Plaintiff, *v.* GILBERT W. CRISSEY, Defendant.

Supreme Court, Saratoga County, July 17, 1943.

*Thomas H. Clearwater* and *William F. Martin* for defendant.

*W. Chase Young* and *Francis L. McElroy* for plaintiff.

IMRIE, J. On June 21, 1941, plaintiff, an employee of Boston and Maine Railroad, was injured in the course of his employment. In this action he seeks damages from defendant physician for malpractice in the treatment of such injury. Under subdivision 7 of rule 107 of the Rules of Civil Practice, defendant moves for judgment dismissing the summons and complaint upon the ground that plaintiff has released his claim against the defendant.

It appears that on April 19, 1943, in consideration of $1,350 and of the payment by the railroad company of the various doctors' bills, plaintiff executed a paper which was entitled " Covenant not to sue " and the defense of release is based upon that instrument.

It is defendant's contention that under the rule in *Milks* v. *McIver* (264 N. Y. 267), the instrument in question releases the defendant physician as well as the railroad company. The defendant arrives at this conclusion not only upon the theory that the paper executed by the plaintiff is in form a release but also that, having been once paid, the plaintiff cannot have another recovery. This is upon the theory that the statement by the court in the *Milks* case, "The law does not permit a double satisfaction for a single injury", is an explanation of the reason for that decision.

It seems to me that the court there decided that the plaintiff, having released one joint tort-feasor, without reservation of his right as against the other, exonerated any other joint tort-feasor, and that the quoted statement of the court stems from the presumption that, a release having been given, the consideration for such release and consequent discharge must be deemed to have been accepted by the injured person in full satisfaction of his claim. Such a philosophy does not necessarily underlie the giving of a covenant not to sue. Rather, it seems to me that the theory of the covenant not to sue is that the claimant who executes it may still conceive that he has an opportunity of further satisfaction from another person.

In its essence, a covenant not to sue is not a release or discharge or a satisfaction of a debt or claim. It has been held that if the covenant is broken and suit is had, it may be pleaded as a bar or, if there is a recovery in spite of the covenant, the obligee may sue to recover under covenant. In practice, to avoid circuity of action, such a covenant has come to be held to operate as a release, insofar as the sole debtor, or insofar as the person to whom the covenant, in terms, runs, is concerned. (*Harrison* v. *Close*, 2 Johns. 448; *Johnson* v. *Daverne*, 19 Johns. 134.)

Where a release to one reserves claimant's right against another joint tort-feasor, such release becomes, in effect, a covenant not to sue. (*LaLone* v. *Carlin*, 139 Misc. 553; *Wilder* v. *Penn. R. R. Co.*, 217 App. Div. 661; *Gilbert* v. *Finch*, 173 N. Y. 455; *Fox* v. *Western New York Motor Lines, Inc.*, 232 App. Div. 308, revd. on other grounds 257 N. Y. 305.)

While a covenant not to sue, drawn in the usual manner, may bar recovery from the person to whom it runs, it is not a release as to him and certainly is not a release or discharge of other persons.

Thus, if the plaintiff had given to the railroad the usual covenant not to sue, there would be no bar to his seeking

recovery from this defendant. The *Milks* case would not apply, nor could it necessarily be presumed that a recovery from the defendant, in addition to the payment by the railroad, would constitute " a double satisfaction for a single injury."

I am obliged, however, to come to the conclusion that the instrument given to the railroad by plaintiff is, in effect, a release, general in terms. Its operation is not limited to the railroad and is a general agreement, upon consideration stated, on the part of the plaintiff " to forever refrain from instituting, pressing, or in any way aiding any claim, demand, suit, proceeding, action or causes of action for damages, costs, loss of service, expenses or compensation for, on account of or in any way growing out of an injury received by me on June 21, 1941, while employed as a brakeman in the service of said Boston and Maine Railroad at Mechanicville, New York."

True, this is a covenant not to sue, but it fails to specify the obligee, and it is so general in terms (" on account of or in any way growing out of an injury ") as to indicate that it might have been intended to cover the defendant as well as the railroad company. Thus, while general in terms, it becomes a release which reserves no rights against any specified person. (*Harrison* v. *Close,* 2 Johns. 448, *supra.*) Although the whole consideration for the plaintiff's agreement was paid by the railroad company, that would be a sufficient consideration for a covenant by the plaintiff releasing any other person jointly liable with the railroad company or agreeing not to bring action against such other person to recover.

There is a cross motion by the plaintiff for affirmative relief that, in the event that the " Covenant not to sue " is interpreted as a release, he may serve an amended complaint. There is force in the defendant's argument that plaintiff's mistake as to the legal consequences of his act in signing the paper in question would not be sufficient to justify reformation. Whether or not the railroad company customarily uses this form of " Covenant not to sue " instead of taking a general or a specific release in making settlement of claims against it, I do not know. Under the circumstances, while defendant's motion should be granted, it will be upon the condition that it does not constitute a bar to plaintiff's beginning of such other action in the premises as he may be advised.

The defendant's motion is granted, as above, with motion costs of ten dollars.